UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Reinaldo Q., <br><br> Petitioner, <br><br> v. <br><br> Kristi Noem, *Secretary, Department of Homeland Security*; Todd M. Lyons, *Acting Director, Immigration and Customs Enforcement*; and David Easterwood, *Acting Director, St. Paul Field Office Immigration and Customs Enforcement*, <br><br> Respondents. | Civ. No. 26-1699 (JWB/DJF) <br><br><br> **ORDER ON PETITION FOR WRIT OF HABEAS CORPUS** |

---

Daniel P. Suitor, Esq., Daniel P. Suitor, PLLC, counsel for Petitioner.

David W. Fuller, Esq., and David R. Hackworthy, Esq., United States Attorney's Office, counsel for Respondents.

---

Petitioner Reinaldo Q. seeks a writ of habeas corpus under 28 U.S.C. § 2241, challenging his return to immigration custody 15 years after he was released on supervision pending execution of his removal order. Petitioner argues that Respondents failed to comply with mandatory procedures governing re-detention.

Petitioner does not challenge the validity of his removal order or the decision to commence removal proceedings. He challenges only the lawfulness of his re-detention under the legal limits that govern the Department of Homeland Security's ("DHS") custody authority. Thus, this Court has jurisdiction under 28 U.S.C. § 2241.

Because Respondents failed to satisfy the regulatory requirements authorizing re-detention, the Petition is granted to the extent it seeks release.

## BACKGROUND

Petitioner Reinaldo Q. is a refugee from Cuba who entered the United States in 1994. (Doc. No. 1, Petition ¶¶ 1, 16, 24). He later became a lawful permanent resident, but after a series of criminal convictions, he was ordered removed from the United States on November 16, 2010. (*Id.* ¶¶ 2, 16, 25–26; Doc. No. 8, Patrin Decl. ¶¶ 5–12, 15; *see also* Doc. No. 9-1; Doc. No. 9-2 at 2–3.) On February 11, 2011, he was released from immigration detention under an Order of Supervision because the government could not execute his removal order. (Petition ¶¶ 3, 26; Patrin Decl. ¶ 16; Doc. No. 9-2 at 3.)

Petitioner has remained under supervision and been in and out of criminal custody for the last 15 years. (*See* Petition ¶¶ 25–26; Patrin Decl. ¶¶ 17–22; Doc. No. 9-2 at 2–3.)

On February 13, 2026, Petitioner was arrested for misdemeanor domestic assault and detained at the Faribault County jail. (Petition ¶¶ 6, 28; Patrin Decl. ¶ 23.) When Petitioner was conditionally released on February 17, 2026, Immigration and Customs Enforcement ("ICE") agents were waiting to arrest him. (Petition ¶¶ 5–6, 16, 28; Patrin Decl. ¶ 24.) He was then detained at the Kandiyohi County jail. (Petition ¶¶ 11, 16.)

Petitioner alleges that he was not given any notice that his Order of Supervision was being revoked or told of any change in circumstances that would justify re-detention. (*Id.* ¶¶ 7, 28.) He also claims Respondents have neither requested that he obtain travel documents to effectuate removal, nor confirmed that Cuba or any other country is willing to accept him. (*Id.* ¶¶ 9, 27, 29.)

2

Respondents state that Cuba is approving repatriation of Cuban nationals on a case-by-case basis, and that they have not yet received an update on Petitioner's case. (*See* Patrin Decl. ¶ 25.) According to Respondents, Mexico is accepting Cuban nationals as an alternative on a case-by-case basis. (*Id.* ¶ 26.) Finally, Respondents state that Petitioner will be transferred to St. Paul on March 5, 2026, where he will be served with an "Order of Supervision Revocation and Informal Interview documents." (*Id.* ¶ 27.)

## DISCUSSION

### I.  Legal Standard

A writ of habeas is available where a petitioner is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Federal courts have jurisdiction to consider § 2241 petitions challenging continued detention following a final order of removal. *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001). The petitioner bears the burden of establishing unlawful detention by a preponderance of the evidence. *See Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (collecting cases).

### II.  Analysis

The government's authority to detain a noncitizen subject to a final removal order is limited. Detention beyond the removal period is lawful only where removal is significantly likely to occur in the reasonably foreseeable future. *Zadvydas*, 533 U.S. at 699–701. When removal is not reasonably foreseeable, continued detention is not authorized, and release under supervision is required. *Id.* at 699.

DHS implemented these requirements through regulations governing post-removal order custody determinations. *See* 8 C.F.R. §§ 241.4, 241.13. Under 8 C.F.R. § 241.13,

ICE must release a noncitizen where removal is not reasonably foreseeable, and no special circumstances justify continued detention. Once a noncitizen has been released under § 241.13, ICE may revoke that release only in limited circumstances: a violation of supervised conditions or changed circumstances demonstrating a significant likelihood of removal in the reasonably foreseeable future. *Id.* § 241.13(i).

These limits are not discretionary. The government is bound to follow the regulations it has promulgated. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954) (holding that an agency is required to adhere to its own regulations).

Respondents do not specifically contend that Petitioner violated the conditions of his Order of Supervision. Nor do they specifically invoke likelihood of removal as the basis for revocation. Their supporting declarations generally state that Cuba is now reviewing removals on a case-by-case basis, and that Mexico is doing the same as a backup. But they do not identify any travel documents, diplomatic communications, or a concrete removal plan for Petitioner. Generalized assertions that Respondents are "working on" or "in the process" of facilitating removal do not satisfy § 214.13 or *Zadvydas*. *See, e.g.*, *Mong C. v. Noem*, Civ. No. 26-1541 (JWB/DLM), Doc. No. 7 at 4–5 (D. Minn. Feb. 24, 2026).

Separate from whether Respondents have invoked a valid basis to re-detain Petitioner under 8 C.F.R. § 241.4 or 241.13, they were required to give him notice of the reasons for revoking his release "[u]pon revocation." *See* 8 C.F.R. §§ 241.4(l)(1) ("Upon revocation, the alien will be notified of the reasons for revocation of his or her release or parole."), 241.13(i)(3) ("Upon revocation, the alien will be notified of the reasons for

4

revocation of his or her release."). That did not happen here. Petitioner alleges that no reasons for revocation were given when ICE arrested him on February 17, 2026, and Respondents have not rebutted that allegation. In fact, Respondents state that they plan to provide Petitioner with the reasons for revocation on March 5, 2026 (Patrin Decl. ¶ 27), practically conceding that no reasons had been given prior to that date.

Instead, Respondents argue that mandatory detention under 8 U.S.C. § 1231(a) applies. (Doc. No. 7 at 2.) They point to § 1231(a)(1)(B)(iii) and reason that Petitioner is "well within the period of mandatory custody" because he was "released from detention or confinement" from the Faribault County jail last month. (*See id.*) But that section is not implicated here.

Section 1231(a)(1)(A) states that "when an alien is ordered removed," removal must occur within 90 days. Section 1231(a)(1)(B) then defines the dates from which that removal period might commence. Together, they indicate that the precise event that triggers the removal period depends on the circumstances at the time removal is ordered: whether the removal order is not yet final, whether the removal is stayed pending judicial review, or whether the noncitizen is detained for non-immigration purposes like serving a state criminal sentence. The record does not show any of these scenarios were present when Petitioner was ordered removed in November 2010.

The record instead shows that Respondents released Petitioner from custody on an Order of Supervision on February 11, 2011, 87 days after he was ordered removed. The removal period does not restart because Petitioner was charged, detained, and released from state criminal custody nearly 15 years later. Respondents provide no authority

5

showing that the removal period resets in this way.

Respondents' answer fails to acknowledge that Petitioner was released on supervision. Their argument treats him as if he had been in criminal custody continuously until February 17, 2026. On those facts, Respondents would perhaps be correct that the removal period would not have commenced until last month. But the record shows Petitioner was detained when the removal order was issued in November 2010, was released on supervision in February 2011, and then spent almost 15 years in and out of state criminal custody until his most recent arrest in February 2026.

Whether Petitioner's aggregated time in immigration custody has eclipsed the *Zadvydas* limit is a different issue—one that the parties do not raise and is not implicated by the facts presented here. The issue is whether Respondents have properly re-detained a noncitizen who is subject to an unexecuted final removal order. They have not.

Regardless of whether Petitioner violated his release conditions or the prospect of his removal has become more likely, the record shows that Respondents have not followed the regulatory scheme to have properly re-detained him in February 2026. Petitioner did not receive notice of the reasons for revocation upon his re-detention.

Failure to comply with these procedural requirements renders continued detention unlawful. *Accardi*, 347 U.S. at 268. Serving Petitioner with the required notice weeks later, while he remains unlawfully detained, does not cure the violation. *See Vang v. Bondi*, Civ. No. 26-1381 (JMG/LDM), Doc. No. 10 at 4–5 & n.3 (D. Minn. Feb. 18, 2026) ("The government detained the petitioner first, and asked questions later. That's not how this works.").

Because Respondents failed to comply with the requirements governing re-detention under 8 C.F.R. § 241, Petitioner is entitled to immediate release subject to the conditions of his existing Order of Supervision. *See Munaf v. Geren*, 553 U.S. 674, 693 (2008) (noting that release is the "typical remedy" for "unlawful executive detention"). The Petition for Writ of Habeas Corpus is granted on that basis, and Petitioner's remaining habeas claims are not reached.

This Order does not bar future custody action taken in compliance with the governing law or regulations.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings in this case, **IT IS HEREBY ORDERED** that:

1.  Petitioner Reinaldo Q.'s Petition for a Writ of Habeas Corpus (Doc. No. 1) is **GRANTED**.

2.  **Release**. Respondents shall immediately release Petitioner from custody. He must be released in Minnesota, subject only to the conditions of his 2011 Order of Supervision. At the time of Petitioner's release, Respondents shall return to Petitioner all personal property in Respondents' custody or control, including but not limited to, passports, identity papers or licenses, immigration records, prescribed medications, and treatment-related equipment. Release may not be delayed for any reason related to the retrieval, processing, or return of such property. Any delay or failure to effectuate release in accordance with this paragraph constitutes noncompliance with this Order.

If Petitioner is currently held outside Minnesota, Respondents shall immediately

initiate Petitioner's return to Minnesota for the sole purpose of effectuating release. Respondents shall not delay initiation of return based on administrative convenience, transportation availability, or detention-capacity considerations.

Upon Petitioner's arrival in Minnesota, Respondents shall effectuate release forthwith. If, at the time release would otherwise occur, weather conditions would expose Petitioner to extreme cold or other reasonably dangerous conditions, Respondents may delay physical release only for the brief period necessary to effectuate release in a safe manner. Respondents shall employ the earliest reasonably available safe means of release and may not delay release where a safe option is available. Any such delay must be strictly limited and must not be used to justify continued custody, supervision, or discretionary release authority.

3. **Notice.** Respondents shall file an update on the status of Petitioner's release by 12:31 p.m. on March 11, 2026. In the update, Respondents must confirm the time, date, and location of the release or anticipated return and release. If Petitioner has been removed from Minnesota, Respondents must file a confirmation of the time, date, and location of release promptly upon Petitioner's arrival in Minnesota.

4. Respondents may not administratively recharacterize the release granted by this Order as grounds to impose conditions or re-impose existing conditions in conjunction with release (including release on recognizance or similar instruments), without prior notice to and authorization from the Court, or absent a new and independently lawful custody decision properly executed under the law. For the avoidance of doubt, Respondents' compliance with this Order requires Petitioner's

immediate release in Minnesota without any newly issued instrument that either imposes new conditions of supervision or restraint or restates previously imposed conditions. Any such conditions imposed at the time of Petitioner's release shall be considered null and void as inconsistent with this paragraph.

     5.     Petitioner's other claims are not reached.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: March 9, 2026  
Time: 12:31 p.m.

*s/ Jerry W. Blackwell*  
JERRY W. BLACKWELL  
United States District Judge